## Case No. 9,859.

### MORSE et al. v. O'REILLY et al.

[6 West. Law. J. 102.]

Circuit Court, D. Kentucky.    Sept., 1848.[1]

PATENTS—VALIDITY AND INFRINGEMENT—INJUNCTION.

[1. The Morse telegraphic patents, both original and reissued, construed, and *held* valid, as covering the result as well as the process, and an injunction granted against defendant as an infringer.]

[2. Where complainants have shown a possession acquiesced in for a long time by the public at large, and for some time by the defendant himself, they are entitled to an injunction, and under such circumstances it is not proper to permit defendants to continue the use of the infringing machine upon giving bond and security to account for the profits.]

This was an action by Morse and others against O'Reilly and others for infringement of the Morse patents for an electric telegraph. On motion for an absolute injunction.

The motion was made upon the bill of Morse, &c., exhibited, accompanied by copies of his patents, original and reissued, and sundry affidavits, as well to show the period of the invention as the infringement of his patent right by the defendants. Notice being given of the motion, the defendant, O'Reilly, appeared by his counsel, Hon. Henry Pirtle, Wm. Y. Gholson, Esq., of Cincinnati, and M. C. Johnson, Esq., attorney general of Kentucky, and produced his answer to the bill of complainants, accompanied by an additional affidavit, incorporating sundry documents, extracts from scientific periodicals, newspapers, and affidavits; all of which were read and considered without objection as to their competency. The motion was made on the 24th August, and a decision thereon given on the 9th September. The complainants were represented by P. S. Loughborough, Esq., district attorney, Hon. A. K. Woolley, and Hon. Ben. Monroe. The reading of the pleadings, and exhibits, and affidavits, &c., occupied seven days, and the discussion eight days. The utmost range of objection was taken by the defendants' counsel. It was contended that Morse was not the inventor of the telegraph; that Professor Steinheil, of Munich, in Germany, had, prior to Morse's application for a patent, invented and put in operation an electric telegraph; that the combined circuits which appear in Morse's first patent were not invented by him; that Edward Davy, of London, had obtained a patent in England for an electric telegraph, operating by combined circuits, and that Morse had obtained the idea from Davy, and on his return from Europe in 1839 had interpolated the principle of the combined circuit in his specification made under his application filed in the patent office in 1838, before he went to Europe, and upon which altered specification his first patent issued in June,

[1] [Affirmed in 15 How. (56 U. S.) 62.]

1840. Various objections were taken to the validity of Morse's first patent, and to reissues thereof in 1846 and 1848, as well as to his patent for an improvement upon his original invention issued in April, 1846, and the reissue thereof in June, 1848.

Among the objections urged to the main patent were—1. The alleged alteration of the specification. 2. The effect of Morse's having obtained a patent in France for the same invention in August, 1838. 3. That his specification claimed a monopoly of the use of the galvanic current for recording at a distance by machinery, other than specified in his patent. 4. That Morse claimed as part of his patented rights a system of signs for an alphabet, not properly the subject-matter of a patent.

In regard to the patent for the improvements, it was, among other things, objected, 1. That they covered a part of the subjects included in the first patents, being, in that view, an attempt to extend the period of the monopoly. 2. That the new patents did not sufficiently distinguish what was the improvement from what was embraced in the main patent. 3. That no patent could issue to a patentee for an improvement upon his own invention. 4. That some part of the improvement had been in public use, prior to the application for a patent, with the consent of the patentee. Many other objections were urged by defendants' counsel.

In reference to the infringement, it was contended by the defendants that the Columbian Telegraph used by them, said to have been the invention of Barnes & Zook, was a distinct, independent invention, and its use no violation of Morse's patented rights. On the part of the complainants it was insisted that the evidence showed that Morse invented the telegraph as early as 1832, and perfected and exhibited it in January, 1836; that he invented and put in operation early in 1837 the combined circuit; that Steinheil's telegraph invention was not published until September, 1838; and that there was no evidence that it was invented prior to that of Morse, and, whenever invented, it is not the telegraph which was patented to Morse; that, as to the combined circuit, embraced in the patent of Davy, under which his specifications were enrolled on the 4th of January, 1839, they were embraced in Morse's patent from the French government, granted in August, 1838, from which Davy might have obtained the idea. As to the validity of the patents, it was insisted that none of the objections taken by the defendants were available. And as to the infringement, it was contended by complainants that the machine used by the defendants was a violation both of the principle and process embraced in Morse's patent. The apparatus of Morse and that claimed as the invention of Barnes & Zook, called the "Columbian Telegraph," were exhibited before the judge, and fully examined, and the affidavits of scientific men read.

Explanations were also made by Mr. Barnes and Professor Morse.

Before MONROE, District Judge.

The judge occupied several hours in delivering his opinion, in which he stated the different points made by counsel, as well on behalf of the claim to an injunction as the objections of the defendants' counsel. As to the invention, he decided that the evidence was satisfactory to his mind that Morse was the true and original inventor of the telegraph; that the only evidence in regard to Steinheil's invention, (without considering whether it was the same as Morse's or not,) was a publication upon his authority, in September, 1838, in which he stated that he had built his line of telegraph from Munich to Bourgehausen, a distance of six miles, which had been in operation without repairs for more than one year. In regard to the principle of the combined circuit, he was also satisfied that it was invented by him early in 1837; Davy's specification of his invention not being enrolled earlier than January, 1839, after the issue of Morse's French patent, in which the principle was disclosed. As to the alleged alteration in the specification in Morse's first patent, though alleged by defendant in his answer, the evidence failed to establish it; and any question as to the effect of such alteration did not therefore arise, and, if proved, he was not prepared to say that it would vitiate the patent. As to the supposed effect of the patent issued in France upon the patent subsequently issued in this country, none could be perceived, unless the position contended for by defendants' counsel that the application for the patent in this country was altered, and that it should take the date of the alleged alterations, or of the request of Morse to issue the patent on his return from Europe, could be sustained. But if these positions could be sustained, the question would then arise, what would be the effect upon the patent issued for fourteen years, and whether its effect would not be only to limit the operation of the patent to the period of fourteen years from the date of the French patent. As to the general claim in the main patent of Morse, he did not consider the objections of the defendants well grounded; and even if it were too broad, it did not seem to him that the effect upon the validity of the patent would be such as the counsel for defendants contended. Other objections taken by defendants' counsel to the validity of the patents were noticed, and each overruled.

Upon the question of infringement, the judge expressed himself as fully satisfied that the instrument exhibited by the defendants, in its structure and mode of operation, violated the principle of Morse's patent, and the process and means described by Morse in his specifications, and, if the general claim of Morse was invalid, still he was of opinion that infringement was made out. As to the alleged prior use of some things in Morse's second series of patents, he did not find in the evidence any thing to warrant the conclusion that it had been of such character as to affect the validity of the patents. As to the propriety of granting the injunction, it seemed to him upon the whole case that the complainants had shown such ground as required that it should be awarded: first, because they had shown a possession acquiesced in for a long time by the public at large, and for some time recognised and acquiesced in by the defendant, O'Reilly, himself; and that it would be as unjust to refuse an injunction on a case clearly showing a right, as it would be to grant it in a case where no right was shown. The judge said that in some cases he had given to the defendants leave to continue the use of the machine, which was alleged to be used in violation of a patented right of a complainant, upon giving bond and security to account for the profit of the use; but that in this cause he did not deem it proper to do so, and that an absolute injunction would be awarded upon complainants' giving bond and security in the penalty of $5,000, with condition to indemnify defendants against any injury that might accrue to them in case complainant should fail to have the injunction perpetuated.

Injunction absolute awarded.

Remarks on the above case, from the National Intelligencer:

In another portion of this paper will be found an abstract of the decision recently made by the United States district judge in Kentucky, in the case of Morse against O'Reilly for an alleged violation of Morse's patents. More clearly to illustrate the scope of this decision, we have been furnished with the following additional information, viz.:

Morse's first patent, after describing the machinery by which he arrives at his result, concludes as follows, viz.: "I do not propose to limit myself to the specific machinery, or parts of machinery, described in the foregoing specification and claims, the essence of my invention being the use of the motive power of the electric or galvanic current, which I call 'electro-magnetism,' however developed, for making or printing intelligible characters, signs, or letters, at any distances, being a new application of that power of which I claim to be the first inventor or discoverer."

On behalf of Prof. Morse it was maintained that there are two distinct, general classes of patents—

1. Where an inventor has accomplished a result entirely new by any means whatsoever, his patent may secure to him that result, as well as his means of arriving at it. The result in such cases is, in truth, the invention; and if another person can step in and by other means arrive at the same result, he may deprive the inventor of the entire benefit of his study and labor. This is more likely

to happen from the notorious fact, that the best system to accomplish a given result is seldom devised at once; and if the result could not be secured by patent, the original inventor would in almost every case be deprived of the benefit from his invention by those who have no other merit but that of devising some improvement in his machinery.

2. The second general class of patents is for new modes of arriving at the old results, in which the result forms no part of the invention. In such cases, patents are for machinery only, or for other processes for arriving at results already well known; and whoever invents a new and improved process may take out a patent for it, and supersede all prior patents for machinery or processes conducive to the same result.

Morse's patents embrace both the result and the process, both being entirely new; and although other persons may invent and patent improved processes or machinery, they cannot use them during the existence of Morse's patent, to produce the same result by the same power, without license from Professor Morse or his assigns. On the other hand, it was maintained that results are not patentable directly or indirectly; that all the patents, to be valid, must be for processes or machinery only. Very numerous authorities, both American and British, were adduced on both sides to sustain their respective positions. The injunction is upon the express ground that Morse's patent covers the result as well as the process, and is nevertheless valid.

[NOTE. The case was taken, on appeal, to the supreme court, where the decree of the circuit court was affirmed, except so much as decreed that the complainants recover costs from the defendants. Accordingly, it was ordered that each party pay his own costs, both in the supreme and circuit courts. Justices Wayne, Nelson, and Grier dissented to the judgment of the court on the question of costs. 15 How. (56 U. S.) 62.]